UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WILLIE E. SHACKLEFORD,

      Plaintiff,                  Civil Action No. 04-74023

v.                           HON.  BERNARD A. FRIEDMAN
                               U.S. District Judge
                               HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL      U.S. Magistrate Judge
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff   Willie E. Shackleford brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for disability and disability insurance benefits under Title II and Title XVIII of the Social Security Act, 42 U.S.C. §§ 416(i), 423 (Tr. 46-48).  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment be DENIED.

-1-

## PROCEDURAL HISTORY

On October 18, 2001, Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging an onset of disability date of April 3, 2001 (Tr. 46-48). After denial of her initial claim, Plaintiff filed a timely request for an administrative hearing, conducted on September 22, 2003 in Flint, Michigan before Administrative Law Judge (ALJ) John A. Ransom (Tr. 248). Plaintiff, represented by attorney Mikel Lupisella, testified. (Tr. 251-258). Melody Henry, acting as Vocational Expert (VE) also testified (Tr. 258-261). ALJ Ransom found that although Plaintiff was unable to perform any of her past work, she retained the capacity to perform a significant range of light work found in significant numbers in the national economy (Tr. 24). On September 24, 2004, the Appeals Council denied review (Tr. 5-8). Plaintiff filed for judicial review of the final decision on October 14, 2004.

## BACKGROUND FACTS

Plaintiff, born January 12, 1949, was age fifty-four when the ALJ issued his decision (Tr. 46). A high school graduate, Plaintiff previously worked as an automotive assembler (Tr. 19, 86). Plaintiff alleges an onset date of April 3, 2001 due to hepatitis C, proteinuria, hypertension and multiple myeloma (Tr. 19).

### A.    Plaintiff's Testimony

On September 22, 2003, Plaintiff testified before Judge Ransom that she was fifty-four (Tr. 251). Plaintiff, right-handed, stated that she had completed twelfth grade (Tr. 251). She reported that she had not worked since April 1, 2001 due to the

swelling of her feet and legs[1] (Tr. 251-252). She stated that she did not belong to clubs or organizations, but attended church weekly (Tr. 252). She testified that she had jogged in her free time until her condition obliged her to stop (Tr. 253).

Plaintiff reported side effects from her diabetes medication, reporting that she experienced dry mouth and increased urination (Tr. 253-254). She stated that the frequent need to urinate disrupted her regular sleep patterns, obliging her to nap three or four times each day (Tr. 254). She reported that she did not perform shopping, housework or yard chores and rarely drove due to her condition (Tr. 254, 257). She stated that sitting for long periods of time caused muscle numbness, but estimated that she could stand for up to an hour and lift up to ten pounds (Tr. 255). She reported that she felt best when sitting with her feet elevated to waist level (Tr. 256). She stated that she avoided stairs, but did not experience problems bending, squatting, pushing or pulling (Tr. 257). She testified that she believed that she could not resume work due to fatigue and her need to keep her feet elevated fifteen minutes of each hour (Tr. 257).

**B.    Medical Evidence**

In August, 1999, results from tests performed at University of Michigan Hospital detected the presence of the hepatitis C virus (Tr. 125). The October, 1999 results of a bone scan revealed "no discrete focal osseous lesions" (Tr. 95). In

---

[1]As noted above, Plaintiff previously alleged an onset date of April 3, 2001.

February, 2000, Scott D. Gitlin, M.D., noting that Plaintiff had not responded to treatment with interferon and ribavirin, commented that her hepatitis was being monitored (Tr. 154-155). Followup notes from a February, 2001 exam indicate that the hepatitis remained stable in the absence of treatment, noting that Plaintiff did not need to be seen for another year (Tr. 149). At the same appointment, Dr. Gitlin noted that the myeloma showed no progression, recommending that Plaintiff return in six months (Tr. 149). In March, 2001, Mohamed Abuharaz, M.D., noted that Plaintiff complained of leg and foot swelling (Tr. 97). He advised Plaintiff to elevate her legs while sitting (Tr. 97). In August, 2001, Dr. Gitlin stated that Plaintiff's hepatitis was "asymptomatic" (Tr. 142). Plaintiff reported to Dr. Gitlin that she felt "quite well" (Tr. 142).

In April, 2001, on the day following the date Plaintiff alleges that she last worked, Elmahdi M. Saeed, M.D., examined Plaintiff for complaints of leg swelling (Tr. 180). Notes from followup appointments in August and October, 2001 indicate that Plaintiff reported no symptoms or weakness (Tr. 176). December, 2001 and January, 2002 reports state that Plaintiff did not experience lower limb edema, but complained of a yeast infection (Tr. 173). A January 10, 2002 report notes that Plaintiff had just returned from a trip to Mexico (Tr. 173). A January 14, 2002 report notes that Plaintiff experienced elevated blood sugar levels (Tr. 172.) Plaintiff received a prescription for Glucotrol and was advised to attend diabetic classes (Tr. 172). Notes to a followup appointment on January 31, 2002 indicate that Plaintiff's

-4-

blood sugar level had dropped dramatically and that she did not experience lower limb edema (Tr. 172).

Also in January, 2002, Dr. Saeed completed a disability insurance claim form, stating Plaintiff was unable to perform her previous job or any other job (Tr. 101). Dr. Saeed stated that Plaintiff could "never" return to her previous job and was totally disabled from "all types of employment" (Tr. 101).[2]

A Physical Residual Functional Capacity Assessment conducted the same month found that Plaintiff retained the ability to lift fifty pounds occasionally and twenty-five pounds frequently (Tr. 106). The same assessment stated that Plaintiff could stand at least two hours in an eight-hour work day and sit for approximately six hours a day, retaining unlimited abilities to push and pull (Tr. 106-107). The assessment, which found that she did not experience manipulative, visual, communicative, or environmental limitations, concluded by stating that she needed to keep her feet elevated for fifteen minutes of every hour and experienced postural limitations due to swollen feet (Tr. 107-110).

In February, 2002, Dr. Gitlin stated that Plaintiff's myeloma condition remained stable (Tr. 135). He added that he did not believe that her complaints of leg and foot swelling were related to the myeloma diagnosis, commenting that the "myeloma does not currently require treatment" (Tr. 135). Notes from a February,

---

[2]In February, 2002, Dr. Saeed reiterated his earlier opinion that Plaintiff was permanently disabled (Tr. 170).

2003 examination by Dr. Gitlin state that Plaintiff reported that she did not experience fatigue "any longer" (Tr. 185).

### C.   Vocational Expert Testimony

VE Melody Henry, noting that Plaintiff was approaching advanced age, classified her former work as unskilled at the light exertional level (Tr. 86, 259). When asked to assume that Plaintiff's testimony was fully credible, the VE stated that she was precluded from her previous work by her limited ability to stand and lift and would be precluded from *all* gainful employment by her stated need to keep her leg elevated fifteen minutes of every hour and nap multiple times a day (Tr. 259). The ALJ posed the following hypothetical question to the VE:

> "If [such an individual] could perform light work with a sit/stand option in a clean air, non-hazardous environment, in your opinion, would there be jobs in existence in significant numbers in the regional economy that she could perform?"

(Tr. 260). The VE found that Plaintiff could perform work unskilled work at the light exertional level as a counter clerk (2,100 jobs), rental clerk (2,000 jobs), cashier (24,000 jobs), general office clerk (reduced range)(35,000 jobs), and recording clerk (1,070), indicating that the job numbers reflected existing jobs in the lower peninsula of Michigan (Tr. 260). She stated that her conclusions conformed with the Dictionary of Occupational Titles (DOT) (Tr. 260). In response to questioning by Plaintiff's attorney, the VE stated that if Plaintiff were limited to lifting ten pounds and the sit/stand option were "fully discretionary," Plaintiff would be unable to perform all

-6-

light work[3] (Tr. 260).

**D.      The ALJ's Decision**

Based on Plaintiff's October 18, 2001 application, ALJ Ransom held that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 23). Citing Plaintiff's medical records, the ALJ found that Plaintiff suffered from the severe impairments of non-insulin dependent diabetes mellitus, hypertension and multiple myeloma, but found nonetheless that none of her severe impairments met or medically equaled one of the impairments found in Appendix 1 Subpart P, Regulations No. 4 (Tr. 24).

The ALJ found that while Plaintiff was unable to perform her past work, she retained the residual functional capacity (RFC) to perform a significant range of light work including:

> "the ability to lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently. She requires the option to alternate between sitting and standing as needed in the performance of job duties and requires a clean air, non-hazardous environment"

(Tr. 24).

He found that although Plaintiff's exertional limitations do not allow her to perform a full range of light work, Plaintiff could perform a significant number of jobs in the national economy, citing the jobs of counter clerk (2,000 jobs), rental clerk

---

[3]The VE indicated that she had not interpreted the ALJ's sit/stand instruction to mean that Plaintiff could sit or stand "at will," finding that the added limitation of *discretionary* sitting and standing would preclude light work (Tr. 261).

(2,000), a cashier (24,000 jobs), office clerk (4,535 jobs), and recording clerk (1,070), stating that the parenthetical figures represent the estimated number of jobs in the regional economy (Tr. 25).

The ALJ found Plaintiff's allegations of limitations "not totally credible," stating that her daily activities, as well as her appearance and demeanor at the hearing stood at odds with her claim of disability (Tr. 21, 24). The ALJ noted that Plaintiff's assertion that she needed to keep her legs elevated for fifteen minutes out of every hour stood unsupported by the medical record (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985). Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir.  1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary*

-8-

*of Health & Human Services*, 755 F.2d 495, 497 (6ᵗʰ Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6ᵗʰ Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inabilit my to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

## Credibility[4]

Plaintiff argues that the ALJ's credibility determination, which rejected her claim that her condition obliged her to keep her legs elevated at waist level for fifteen minutes every hour is unsupported by substantial evidence. *Plaintiff's Brief* at 9 *referencing* (Tr. 21). Plaintiff cites *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994) to support her argument that the ALJ's credibility determination requires a remand for further proceedings. *Id.* at 12.

Social Security Ruling 96-7p states that

> "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."

Contrary to Plaintiff's argument that the ALJ did not properly explain his credibility determination, I find that the ALJ amply supported his conclusion with

---

[4]Aside from Plaintiff's primary argument which attacks the ALJ's credibility determination, she also maintains that the administrative decision failed to justify its rejection of the her treating physician's disability opinion. *Plaintiff's Brief* at 11. This contention, placed as an apparent afterthought at the end of the credibility argument, is without merit since the ALJ stated that he discounted Dr. Saeed's opinion because it stood at odds with other portions of her medical records. Further, as discussed in detail below, Dr. Saeed's pronouncement of disability, which he recorded on an application for insurance benefits, does not comport with his examination notes from the same period.

evidence drawn from the record.[5]   As noted above, SSR 96-7 mandates that in the absence of any evidence supporting Plaintiff's alleged limitations, the ALJ must make a credibility determination based on the entire record.     In addition, it is Plaintiff who bears the burden of proof in substantiating her claimed limitations. *See Duncan v. Secretary,* 801 F.2d 847, 853 (6th Cir.1986); *McCormick v. Secretary of HHS,* 861 F.2d 998, 1002-1003 (6th Cir.1988). *See also, Hurst v. Secretary,* 753 F.2d 517, 519 (6th Cir.1985) (Limitations must be substantiated by some objective, clinical or laboratory findings.)

The ALJ justifiably rejected Plaintiff's claim that she needed to keep her feet elevated at waist-level fifteen minutes of every hour.  Although Plaintiff points out that the Physical Residual Functional Capacity Assessment performed in January, 2002 concluded that she needed to keep her feet elevated fifteen minutes every hour, the reviewing physician's assessment appears to rely on Plaintiff's short-term complaints of leg and foot swelling to her physicians in February through April of the previous year. As noted above, Plaintiff's followup exams, conducted in August and October, 2001 state that Plaintiff did not report symptoms or weakness (Tr. 176). Exam notes from a December, 2001 appointment and subsequent examinations state

---

[5]While Plaintiff states correctly that her claim that she needed to keep her feet elevated fifteen minutes every hour was supported by record evidence (see Tr. 110) as discussed in this section, the weight of medical evidence allowed the ALJ to properly conclude that such limitations were only temporary and thus insufficient to support a disability finding.

-11-

affirmatively that Plaintiff did not experience lower limb edema (Tr. 176). Although Plaintiff testified at the hearing that she was plagued with constant fatigue, she traveled to Mexico in January, 2002 and told Dr. Gitlin in February, 2003 that she no longer experienced fatigue (Tr. 173, 185).

Plaintiff ends her credibility argument by stating that Dr. Saeed's disability opinions of January and February, 2002 were improperly ignored by the ALJ. *Plaintiff's Brief* at 11. However, Dr. Saeed's opinions, which were properly discussed by the ALJ, stand completely unsupported by his own examination notes created those same months. While Plaintiff reported elevated blood sugar levels on January 12, 2002, by January 31, 2002, Dr. Saeed noted blood sugar levels in the normal range (Tr. 172). Although Dr. Saeed reported that Plaintiff could "never" again perform gainful employment in February, 2002, in July, 2002 he noted after examining Plaintiff that her diabetes had been stabilized and that her hepatitis and multiple myeloma were in remission (Tr. 168, 170). While under regular circumstances, the treating physician's opinion would be accorded great weight, *see Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004), Dr. Saeed's disability opinion is not only contradicted by the reports of other care providers (which in and of itself would permit the ALJ to reject it) but also seems strangely disembodied from his own examination notes which suggest that Plaintiff's complaints of leg and foot swelling as well as diabetes complications were temporary and/or intermittent at

-12-

worst.

This Court notes in closing that its conclusion upholding the ALJ's finding of non-disability is not intended to trivialize Plaintiff's legitimate impairments. However, based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, pursuant to *Mullen v. Bowen, supra,* and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d

-13-

1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: September 21, 2005

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 21, 2005.

S/Gina Wilson
Judicial Assistant

-14-

-16-